UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re | Chapter 13 |
| Joseph Michael Turkowitch and | |
| Carol Jean Turkowitch, | Case No. 06-22507-svk |
| Debtors. | |

| | |
|---|---|
| In re | Chapter 13 |
| Steven Dean Austin, Sr. and | |
| Shannon Lee Austin, | Case No. 06-24599-svk |
| Debtors. | |

**Memorandum Decision on Objections to Confirmation of the Debtors' Chapter 13 Plans**

The issue in these chapter 13 cases is whether the surrender of a car to a secured creditor satisfies the creditor's claim in full, precluding the creditor from asserting a deficiency claim. The controversy arises under an unnumbered paragraph in 11 U.S.C. § 1325(a) enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). The so-called "hanging paragraph" has generated significant litigation and a number of judicial decisions, including one from the United States District Court for the Western District of Wisconsin, adopting the minority view on this issue. While the law is unsettled, the facts are not in dispute.

Joseph Turkowitch purchased a 2004 Ford Expedition on September 27, 2004, for a purchase price of $49,859.62. The sales contract provided that Turkowitch would pay the amount financed - $38,256.48 - to Ford Motor Credit Company ("Ford") in monthly installments of $531.34 over a period of 72 months. Turkowitch made sixteen of these monthly payments before filing bankruptcy on May 12, 2006. On the date of the chapter 13 petition, Turkowitch owed $29,785.04 to Ford according to the terms of the sales contract. The original chapter 13 plan provided that the Turkowitches would retain the vehicle and make monthly payments to Ford, but when the Turkowitches were unable to make the plan payments – the payment to Ford alone was $625 per month – they filed a modified plan and proposed to surrender the vehicle to Ford, in complete satisfaction of Ford's claim. Ford was paid all of the pre-confirmation adequate protection payments, and the Turkowitches surrendered the vehicle to Ford in August 2006.

Steven and Shannon Austin purchased a 2002 Nissan Pathfinder and financed it with Milwaukee Metropolitan Credit Union (MMCU) on May 3, 2005 under an installment sales contract. The Austins filed their chapter 13 petition on August 21, 2006, and filed their plan the same day. In their schedules, the Austins listed the Pathfinder as secured by a purchase money security interest in the amount of $20,171.00, of which $5,171.00 was unsecured. However, the Austins indicated in their plan that they would surrender the Pathfinder to Centrix Financial (the

agent of MMCU) in full satisfaction of the secured claim. MMCU filed its secured proof of claim on September 8, 2006, in the amount of $20,875.23 with interest at 17.90%. On September 13, 2006, MMCU filed an Objection to Confirmation of the Austins' plan, stating that MMCU should be able to file an unsecured deficiency claim after the car was surrendered and sold. At the hearing on the Objection, the Court determined that the issue presented was the same issue as was already under advisement in the Turkowitch matter - namely, whether a debtor is allowed to surrender a vehicle in full satisfaction of a secured claim under 11 U.S.C. § 1325(a). Because the issues presented in these two cases are identical, and because the Debtors are represented by the same law firm, the Court consolidated the cases for purposes of deciding this issue.

Section 1325(a) of the Bankruptcy Code provides that the bankruptcy court shall confirm a chapter 13 plan if certain requirements are met. In particular, § 1325(a)(5) concerns the required treatment of secured claims under the plan. This provision states, in pertinent part:

> (a) Except as provided in subsection (b), the court shall confirm a plan if–
> . . .
> (5) with respect to each allowed secured claim provided for by the plan–
> (A) the holder of such claim has accepted the plan;
> (B) (I) the plan provides that–
> (I) the holder of such claim retain the lien securing such claim until the earlier of–
> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
> (bb) discharge under section 1328; and
> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
> (iii) if–
> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

2

(C) the debtor surrenders the property securing such claim to such holder.

With BAPCPA, Congress further modified § 1325(a) by adding the infamous "hanging paragraph" to the end of the section. This paragraph states:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

The exemption of § 506 is significant because § 506(a)(1) provides for the bifurcation of a secured claim into secured and unsecured portions, based on the value of the collateral: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim."

None of the parties dispute that Ford's and MMCU's claims are claims described in the hanging paragraph ("910-claims"). They do, however, disagree as to the Bankruptcy Code's treatment of these claims. The Turkowitches and the Austins (hereinafter, the "Debtors") read § 1325(a) as allowing them to surrender the collateral in full satisfaction of the 910-claims. Ford and MMCU (hereinafter, the "Creditors") argue two alternative theories: first, the hanging paragraph requires payment of the entire 910-claim in full, regardless of whether the debt is paid through the plan or the collateral is surrendered postpetition; and second, even if the creditor is not entitled to a "secured deficiency claim," state law would allow the claim holder to seek an unsecured deficiency claim upon surrender (and sale) of the collateral.

The courts that have addressed this issue have settled into two camps. The majority reads the hanging paragraph as preventing the bifurcation of secured claims upon surrender, which effectively precludes 910-creditors from asserting deficiency claims. The minority reaches the opposite result: surrender of the collateral does not fully satisfy a 910-claim, and the hanging paragraph does not prevent these creditors from pursuing claims for a deficiency.

The question boils down to: If § 506 does not apply, will the creditor have a claim after collateral is surrendered. A review of the pre-BAPCPA treatment of secured claims clarifies the answer.

3

Prior to BAPCPA, § 1325(a)(5) gave the debtor three options for dealing with secured debt. Under § 1325(a)(5)(A), the debtor and secured creditor could agree upon the treatment of the claim. This provision has not changed under BAPCPA. A creditor holding a 910-claim and the debtor can still negotiate acceptable payment terms.

Second, pursuant to § 1325(a)(5)(B), the debtor could propose to retain the collateral and pay the amount of the allowed secured claim in installments. This option, was known as the "cram down," is explained by the Supreme Court in *Associates Commercial Corp. v. Rash*:

> Under the cram down option, the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, see § 1325(a)(5)(B)(I), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, i.e., the present value of the collateral, see § 1325(a)(5)(B)(ii). *The value of the allowed secured claim is governed by § 506(a) of the Code*.

520 U.S. 953, 957 (1997) (emphasis supplied). The definition of allowed secured claim in § 506 is tied to the value of the collateral. If the collateral is worth less than the debt, under § 506(a), the creditor's allowed secured claim is limited to that value, and the remaining balance on the debt will be an unsecured claim. As a result, pre-BAPCPA, application of the definition of "allowed secured claim" in § 506(a) to the cram down provisions of § 1325(a)(5)(B) (relative to collateral worth less than the amount of the debt) resulted in the bifurcation of the claim into a secured and unsecured portion. "The 'allowed secured claim' of which § 1325(a)(5) speaks is derived through valuation and 'bifurcation' in accordance with § 506(a). As the Supreme Court explained, 'Section 506 . . . governs the definition and treatment of secured claims, . . . '[and] provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured.'" *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 471 (B.A.P. 6th Cir. 1998) (quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 238-239 (1989) (footnotes omitted)). Pre-BAPCPA, after bifurcation of the claim, to comply with § 1325(a)(5)(B), the secured portion was paid in full (with interest in order to achieve the value of the allowed secured claim as of the effective date of the plan), and the unsecured portion was relegated to unsecured claim status.

By removing § 506 from the mix, BAPCPA's hanging paragraph has drastically changed this treatment. It is clear now – post-BAPCPA – that the bifurcation function of § 506 cannot be triggered by § 1325(a)(5)(B), since the hanging paragraph has simply subtracted § 506 from the equation. Therefore, if a debtor retains a 910-car and proposes to pay the claim through the plan, the debtor must pay "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim [in an amount] not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). In other words, if § 506 does not apply to reduce the allowed amount of the claim to the value of the collateral, the entire claim is a secured claim, and the debtor must pay that entire amount to satisfy § 1325(a)(5)(B). If the Debtors here had

4

proposed to retain their vehicles under § 1325(a)(5)(B), they would be required to pay the full amount of the claims as secured claims and could not relegate any of the Creditors' claims to unsecured status.

The third option for dealing with secured claims is the surrender of the property "securing such [allowed secured] claim" under § 1325(a)(5)(C). Cases construing this provision confirmed that the debtor could "surrender the collateral to the secured creditor in full satisfaction of the creditor's 'secured' claim, relegating the creditor only to 'unsecured' status as to any deficiency." *In re White*, 169 B.R. 526, 529 (Bankr. W.D.N.Y. 1994). Accordingly, prior to BAPCPA, application of § 506 resulted in "the bifurcation of the creditor's claim into its secured and unsecured components upon surrender of the collateral." *In re Ezell*, 338 B.R. 330, 339 (Bankr. E.D. Tenn. 2006).

Now, however, "section 506 shall not apply to a claim described" in § 1325(a)(5). Whether the removal of § 506 means that the claim is not bifurcated has given rise to a number of written decisions from courts across the country. As some of these courts have aptly pointed out, "[t]he starting point deciding the issue is the statutory language itself." *In re Evans*, 349 B.R. 498, 500 (Bankr. E.D. Mich. 2006) (citing *Ron Pair Enters.*, 489 U.S. at 241). Where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Ron Pair Enters.*, 489 U.S. at 241 (internal quotations omitted). Further, "[w]hen interpreting a statute, if the statute is unambiguous, [the court] must enforce the plain meaning of the language enacted by Congress. Th[e] court will look beyond the express language of a statute only where that statutory language is ambiguous or where a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme." *In re Voelker*, 42 F.3d 1050, 1051 (7th Cir. 1994) (internal quotations and citations omitted).

While some courts have termed the hanging paragraph "confusing," *Ezell*, 338 B.R. at 340, the vast majority of the courts who have examined this language of the statute have not found it to be ambiguous. *See, e.g., In re Sparks*, 346 B.R. 767, 773 (Bankr. S.D. Ohio 2006) ("This Court having studied the 'hanging paragraph' of § 1325(a) finds the language unambiguous and clear"); *In re Payne,* 347 B.R. 278, 282 (Bankr. S.D. Ohio 2006) (same); *In re Osborn*, 348 B.R. 500, 504 (Bankr. W.D. Mo. 2006) ("The language of the hanging paragraph is clear"); *In re Nicely*, 349 B.R. 600, 604 (Bankr. W.D. Mo. 2006) ("The hanging paragraph unambiguously provides that section [506] is no longer applicable"); *In re Brown*, 346 B.R. 868, 874 (Bankr. N.D. Fla. 2006) ("the language of the Hanging Paragraph is not at all ambiguous to the Court"); *but see In re Duke*, 345 B.R. 806, 809 (Bankr. W.D. Ky. 2006) (hanging paragraph is ambiguous).[1]

---

[1] The Creditors point to § 1325(a)(5)(A) in challenging *Ezell*'s conclusion about the ambiguity of the statute. The Creditors argue that because *Ezell* assumes the hanging paragraph would not apply to § 1325(a)(5)(A), it should have concluded that the statute was ambiguous. However, § 1325(a)(5)(A) would not necessarily require application of § 506 for a 910-creditor to assert an unsecured claim because § 1325(a)(5)(A) allows the parties to agree on a particular treatment on their own terms. The plain language is not frustrated by allowing the parties to agree to some bifurcated treatment under § 1325(a)(5)(A).

5

This Court concludes that the language of the hanging paragraph is not ambiguous. If §
506 does not apply, there can be no bifurcation of the claim, whether or not the collateral is
worth less than the claim and whether or not the collateral is surrendered. Thus, removing the
bifurcation provisions of § 506 means that the 910-claim is satisfied in full by surrender of the
collateral under § 1325(a)(5)(C). The following analysis in *Osborn* and *Evans* supports this
conclusion:

> The language of the hanging paragraph is clear. It provides that
> "*[f]or purposes of paragraph (5), section 506 shall not apply*" to a
> secured claim if the creditor is a hanging paragraph creditor.
> There is no ambiguity in this provision: if you are a hanging
> paragraph creditor, § 506 does not apply to your claim, and a plan
> cannot provide for bifurcation of it . . . . [T]his plain language does
> not differentiate, in any way, between the options provided in
> paragraphs (B) and (C) of § 1325(a)(5). Thus, in order to prevail,
> [the creditor] must show that literal application would either be
> contrary to congressional intent or would produce an absurd result.

*Osborn*, 348 B.R. at 504 (emphasis in original); *accord Evans*, 348 B.R. at 500.

The Creditors argue that the hanging paragraph is ambiguous because enforcement of the
statute results in worse treatment for them as compared to secured creditors under pre-BAPCPA
law, and 910-creditors would not be entitled to a deficiency claim while creditors whose
collateral was purchased more than 910 days before the petition would be entitled to such a
claim. This absurd result, the Creditors argue, is at odds with Congress's intent to "improve the
treatment of creditors holding" 910 claims. The Creditors point specifically to the title of the
BAPCPA section amending § 1325(a) to include the hanging paragraph: Section 306, "Title III:
Discouraging Bankruptcy Abuse: Giving Secured Creditors Fair Treatment in Chapter 13 . . . ."

Several courts have rejected this argument. In *Brown*, the court noted that "secured and
unsecured creditors' lobbies were represented during the drafting and enactment of BAPCPA,"
so "it is entirely logical that Congress apportioned the [proverbial] pie to favor some creditors in
some situations but others in different situations." 346 B.R. at 875. Similarly, in *Evans*, the
court noted that "it is entirely logical that, if a creditor is to be deemed fully secured for one
purpose, it should be fully secured for other purposes," referring to the treatment under §
1325(a)(5)(B) and (C). 348 B.R. at 505.

Section 306 of BAPCPA supports this conclusion, since that section was not entitled
"Giving Secured Creditors Improved Treatment in Chapter 13," but "Giving Secured Creditors
*Fair* Treatment in Chapter 13 . . . ." (Emphasis added). The hanging paragraph promotes fair
treatment by not permitting the reduction of the 910-creditor's lien to the value of the collateral

6

if the debtor retains the vehicle.[2]  As such, 910-creditors are far better protected by the hanging paragraph from the pre-BAPCPA "double risks" of depreciation of their collateral and non-payment by the debtor.  *See Rash*, 520 U.S. at 962.  If the debtor chooses to retain the vehicle, any depreciation will likely be more than offset by the higher payments required on the 910-claim.  If, due to these higher payments, the debtor cannot propose a feasible plan and seeks to surrender the vehicle, the creditor bears no risk of depreciation or non-payment: "When a debtor surrenders the property, a creditor obtains it immediately, and is free to sell it and reinvest the proceeds."  *Id.*  In such a circumstance, there is nothing unfair about denying the 910-creditor a deficiency claim that will dilute the distribution to other creditors or increase the debtor's obligations under a plan.

Finally, the Creditors present an elaborate hypothetical in their Reply Brief attempting to illustrate that surrender in complete satisfaction of the 910 claim would be at odds with Congress's intent.[3]  The scenario presented in that hypothetical is interesting, but it does not shed light on the issue that is actually before the Court.  The "absurdity" presented by removing the bifurcation provisions of § 506 is nothing more than the logical result of BAPCPA's modification of creditors' rights.  "Congress is assumed to know and understand the effect of its legislation, and this Court may not rewrite the statute as enacted by Congress."  *Payne*, 347 B.R. at 283.  Moreover, as explained above, this Court can envision that the denial of this deficiency claim is exactly what was envisioned by the drafters, in order to encourage debtors to either pay the full amount of the creditor's claim to retain the vehicle or to immediately surrender the vehicle to the creditor before any further depreciation could occur.  Accordingly, this Court agrees with the majority in holding that the language of the hanging paragraph is neither ambiguous nor absurd in its application, and the statute should be applied as written.

The Creditors rely on two cases in support of their argument that they are entitled to deficiency claims under § 1325(a)(5)(C): *In re Duke*, 345 B.R. 806, 808 (Bankr. W.D. Ky. 2006); and *In re Zehrung*, No. 06-C-437-S, 2006 U.S. Dist. LEXIS 75149 (W.D. Wis. Oct. 16, 2006).  In *Duke*, the court held that the language of the hanging paragraph was ambiguous, and thus looked to the legislative history of that provision to determine its meaning.  The court concluded that "Congress intended to provide more protection to creditors with purchase money security interests," and that "[i]f Congress had intended to enact what would essentially be an 'anti-deficiency' provision, it would have made its intentions very clear in the statute."  345 B.R.

---

[2] Ironically, the same provision that prevents the debtor from lien stripping and reducing a creditor's allowed secured claim prevents the creditor from claiming a deficiency against the debtor.  While this new language may not operate to hoist the 910-creditor by his own petard, surely the creditor may be said to hang by his own paragraph.

[3] The scenario involves debtors who "totaled" the 910-car in an accident, left it incurring storage charges at an impound lot, and did not respond to the creditor's state court action.  When the creditor finally obtained the vehicle by paying the storage fees and was on the verge of selling it for salvage and parts, the debtors filed chapter 13 and proposed to surrender the vehicle in full satisfaction of the 910-claim.  This hypothetical does not demonstrate the absurdity of the hanging paragraph; absurdity would result if the creditor failed to challenge the debtors' good faith in proposing such a plan.

7

806. As a result, the court held that "the surrender of a vehicle meeting the requirements of the 'hanging paragraph' does not result in a full satisfaction of the Creditors' claims, leaving to them whatever state law remedies are available to them, including pursuit of a deficiency as an unsecured claim during the Chapter 13 proceeding." *Id.*

The *Zehrung* court did not explicitly find the hanging paragraph ambiguous, but provided a more thorough analysis of a debtor's state law rights under the hanging paragraph. The court noted that § 506 operates to bifurcate a claim allowed under § 502 into its secured and unsecured components, and that if § 506 is inapplicable to certain claims, "then those claims could not be 'allowed secured claims' under a literal reading." 2006 U.S. Dist. LEXIS 75149, at *4. Terming this result a "potential absurdity," the court explained that "most courts have treated this hanging paragraph as . . . leaving the secured creditor in the position provided by non-bankruptcy law." *Id.* at *5. Recognizing that the majority of courts addressing the issue have allowed a debtor to extinguish the entire 910-claim upon surrender, the *Zehrung* court noted that "[s]ection 506 has application only when the estate retains an interest in the collateral, a circumstance which disappears with surrender. Rather, when collateral is surrendered pursuant to § 1325(a)(5)(C), the amount of the remaining unsecured claim is determined by state law." *Id.* at *7 (citing Alan N. Resnick & Henry J. Sommer, 8 *Collier on Bankruptcy* ¶ 1325.06[4] (15th ed. 2006)). As a result, in accordance with the legislative intent of the statute, the *Zehrung* court held that the hanging paragraph did not eliminate the right of a 910 car creditor to pursue an unsecured deficiency pursuant to state law.

The Court is not persuaded by the reasoning of *Duke* or *Zehrung*. The hanging paragraph refers to § 1325(a)(5) which expressly covers "allowed secured claims." Thus 910-claims are allowed secured claims; the hanging paragraph simply prevents the application of § 506 to bifurcate them. As Judge Rhodes noted, "[a]llowing a creditor to pursue a deficiency claim following surrender of collateral pursuant to § 1325 would in all practical effect bifurcate the secured creditor's claim, in violation of the plain meaning of the hanging paragraph." *Evans*, 349 B.R. at 501. "The loss of the deficiency claim is the logical result of the application of the statutory language according to its plain meaning . . . ." *Nicely*, 349 B.R. at 603. Thus, the Creditors are not entitled to an unsecured deficiency claim under the Bankruptcy Code.

The Court also respectfully disagrees that § 506 applies only when the bankruptcy estate retains an interest in collateral. First, the determination of whether the estate has an interest in property is generally made at the commencement of the case. 11 U.S.C. § 541(a). At the commencement of these cases, the 910-vehicles were property of the estate, and, but for the hanging paragraph, § 506 would have applied to determine the amount of the allowed secured claims, regardless of whether the Debtors proposed to retain or surrender the vehicles. This conclusion is supported by the confirmation requirements of chapter 12, which are identical to chapter 13 in treatment of secured creditors, except chapter 12 contains no hanging paragraph. It is clear that § 506 does apply to a chapter 12 debtor who proposes to surrender collateral, even though the collateral will no longer be property of the estate. *See In re Fobian,* 951 F.2d 1149, 1151 (9th. Cir. 1991) (In a case where the debtors proposed to surrender collateral in full satisfaction of secured debt, "Section 506 required the bankruptcy court to determine whether the

8

bank was both a secured and an unsecured creditor. Without doing so, the court could not apply the tests of Section 1225 to the plan.").

The Creditors alternatively argue that they would be entitled to a *secured* deficiency claim under the Code. Again, as Judge Rhodes explained,

> Nothing in the statute as amended states that a 910 creditor's claim is fully secured for all purposes. Rather all Congress did was to eliminate the § 506 bifurcation of such claims. Therefore, the Court rejects [the creditor's] argument that Congress intended to give it a fully secured claim and that therefore after surrender and sale of the vehicle, it is entitled to a secured claim for the deficiency balance. There is simply no basis in the statute for such a result.

*Evans*, 349 B.R. at 501.

Under *Duke* and *Zehrung*, the Creditors also assert that they should be entitled to unsecured deficiency claims under state law. This Court disagrees. *Duke*'s bald assertion that a 910-creditor would be entitled to an unsecured deficiency claim under state law is without reference to any statute or caselaw. *See Duke*, 345 B.R. at 809. Further, the *Zehrung* court relies on *Duke* and *Collier on Bankruptcy* in support of its conclusion that state law would provide a deficiency claim upon surrender of a 910-car. Paragraph 1325.06[4] of *Collier* states

> The Code is silent as to the extent to which the debtor or the court, as a court of equity, may impose reasonable restrictions on the manner in which the holder of an allowed secured claim may dispose of collateral surrendered by the debtor under section 1325(a)(5)(C). The applicable provisions of the Uniform Commercial Code control the disposition of collateral surrendered under section 1325(a)(5)(C) with the result that the holder of an allowed secured claim would be entitled to an allowed unsecured claim for the amount remaining due the holder after an appropriate disposition of the surrendered collateral, unless the debtor and the holder otherwise agree or unless the collateral was accepted by the creditor in full satisfaction of the entire claim in accordance with U.C.C. Revised § 9-620 or other applicable nonbankruptcy law.

(15th ed. 2006) (footnotes omitted). This language appears to answer the question for the Creditors, since it explicitly states that surrender of collateral under § 1325(a)(5)(c) would allow a 910-creditor to pursue an "allowed unsecured claim" for the deficiency. The problem with this paragraph, and thus with *Zehrung*'s reliance on it, is that this particular language in *Collier* appears to be a relic from pre-BAPCPA editions of the treatise. *See* 8 *Collier on Bankruptcy* ¶

9

1325.06[4] (15th ed. 2003). The utility of this passage after BAPCPA is therefore questionable, since the discussion does not take the hanging paragraph into account at all.

As other courts have noted, the Bankruptcy Code controls the allowance of claims for purposes of a debtor's chapter 13 plan:

> Certainly, state law defines creditors' rights, including the right to a deficiency. However, state law determines rights in property only to the extent such rights are not modified by the Bankruptcy Code. Section 1325(a)(5), along with § 1322(b)(2) (which provides that a plan may modify the rights of holders of secured claims), expressly permits modification of secured creditors' rights, including hanging paragraph creditors. Consequently, even though [the Creditors] might be entitled to a deficiency outside of bankruptcy, [they are] not entitled to an allowed claim for any such deficiency here, so the Debtors are not required to provide for one in their Plan.

*Osborn*, 348 B.R. at 506 (footnotes omitted) (internal quotations omitted); *see also Fleming*, 339 B.R. 716, 724 (Bankr. E.D. Mo. 2006).

In summary, the Court finds that the language of the hanging paragraph is not ambiguous nor does its application lead to absurd results. Removal of § 506 from the requirements for treatment of secured claims in chapter 13, means that the 910-creditor is not entitled to a bifurcated claim, whether that is a good thing because it prevents lien stripping, or a bad thing because it prevents the filing of a deficiency claim after the surrender of collateral. This rule complies with the plain meaning of the statute, constitutes the fair treatment of secured creditors as envisioned by Congress (because it will encourage debtors to either pay the claim in full or promptly surrender the collateral) and is in harmony with the majority of the bankruptcy courts that have analyzed this issue. The Debtors' plans in these cases propose the surrender of the vehicles in full satisfaction of the Creditors' 910-claims, which is permissible under § 1325(a)(5)(c) and the hanging paragraph. The Creditors' Objections are overruled, and the Debtors' plans may be confirmed.

Dated: November 16, 2006

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge